IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUBAH NOOR NASIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23 C 15738 |
| v. ) | |
| ) | Magistrate Judge |
| UNITED STATES DEPARTMENT ) | Maria Valdez |
| OF STATE *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brought the present mandamus action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, seeking to direct the United States Department of State to adjudicate her father's visa application. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The matter is now before the Court on Defendants' Motion to Dismiss [Doc. No. 11]. For the reasons that follow, Defendants' motion is granted.

**FACTUAL BACKGROUND**[1]

Plaintiff is a citizen of the United States. Her father, Mohammad Nasir Uddin, is a citizen of Canada. On October 19, 2020, Plaintiff applied for an immigrant visa to allow Uddin to enter the United States and obtain lawful permanent resident status. She paid all applicable filing and visa fees. United

---

[1] The Court accepts the facts stated in Plaintiff's complaint as true. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

States Citizenship and Immigration Services ("USCIS") approved her I-130 visa petition on June 16, 2021. The National Visa Center assigned a case number and sent it to the U.S. Consulate in Montreal, Canada for an interview. Uddin's interview was conducted on or about February 14, 2023. After the interview, Uddin's visa was not issued. Instead, the consular officer requested additional information through a Form DS-5535; Uddin submitted the information to the embassy on or around February 16, 2023. No further action has been taken since that date, and Plaintiff filed the present case on November 7, 2023.

## PROCEDURAL BACKGROUND

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, governs the admission of foreign nationals into the United States. Under the INA, a foreign national wishing to reside permanently in the United States must obtain an immigrant visa. The type of visa Plaintiff seeks on behalf of Uddin is one for an Immediate Relative. *See* 8 U.S.C. § 1151(b)(2)(A)(i). A citizen may file a Form I-130 petition with USCIS to determine that a foreign national is entitled to be classified as an Immediate Relative as described in the statute. *See* 8 U.S.C. § 1154(a)-(b).

If the petition is approved, the foreign national must apply for a visa from the State Department using Form DS-260. *See* 8 U.S.C. §§ 1201(a), 1202(a). The application generally must be made to the consular office in the foreign national's place of residence. *See* 22 C.F.R. § 42.61. Once the foreign national has filed necessary documents and paid fees, the State Department's National Visa Center will usually schedule an in-person session with a consular officer for the execution

of the application and an interview. *See* 8 U.S.C. § 1202(h); 22 C.F.R. § 42.62. Once the visa application has been completed and executed before a consular officer, the officer must issue or refuse the visa under 8 U.S.C. § 1182(a) (describing classes of foreign nationals ineligible for visas or admission) or 8 U.S.C. § 1201(g) (explaining circumstances in which the consular officer may determine that the foreign national is ineligible for a visa), or other applicable law. *See* 22 C.F.R. § 42.81(a). If a visa is refused, "[t]he consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available." 22 C.F.R. § 42.81(b).

Plaintiff's complaint alleges two counts, both related to what she frames as Defendants' failure to adjudicate Uddin's visa: Count I alleges Agency Action Unlawfully Withheld and Unreasonably Delayed, in violation of the APA; Count II alleges Violation of Right to Due Process of Law. Plaintiff prays that the Court (1) issue a writ of mandamus compelling Defendants to promptly complete all administrative processing within sixty days; (2) adjudicate Uddin's visa pursuant to the Court's declaratory judgment authority; (3) issue a writ of mandamus compelling Defendants to issue an immigrant visa to Uddin; (4) issue a writ of mandamus compelling Defendants to explain to Plaintiff the nature and cause of the delay and to inform him of any action that may be taken to accelerate processing of the visa; and (5) attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

3

**DISCUSSION**

Defendants have moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction as well as failure to state a claim.

**I.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Defendants first move to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the visa application was already adjudicated on February 14, 2023, and thus Plaintiff lacks standing to request an adjudication and/or her request for relief is moot.[2]

To prove standing under Article III, a plaintiff must show: "(i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relation between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) the likelihood that the injury will be redressed by a favorable decision." *Wisc. Right to Life v. Schober*, 366 F.3d 485, 488-89 (7th Cir. 2004) (citation omitted) ("This jurisdictional requirement ensures that the resources of the federal judiciary are not expended on advisory opinions and hypothetical disputes.").

For a motion to dismiss for lack of standing based on the face of the complaint, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee*

---

[2] "Mootness is often described as 'the doctrine of standing set in timeframe: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Wisc. Right to Life v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (citations omitted).

*v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003). However, a party may raise a factual rather than a facial challenge to jurisdiction: "Where evidence pertinent to subject matter jurisdiction has been submitted, . . . the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (citation and internal quotations omitted); *see Amling v. Harrow Indus. LLC*, 943 F.3d 373, 376 (7th Cir. 2019). "The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Sapperstein*, 188 F.3d at 856.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citation omitted). Once a defendant submits evidence showing lack of jurisdiction, "the plaintiff bears the burden of coming forward with competent proof that standing exists." *Id.*; *see Sapperstein*, 188 F.3d at 855.

In support of their motion, Defendants offer the declaration, made under penalty of perjury, of Samuel W. McDonald, an attorney-adviser in the Office of the Assistant Legal Adviser for Consular Affairs, U.S. Department of State. (McDonald Decl., Defs.' Mot., Ex. A, ¶ 1.) McDonald searched the Consular Consolidated Database ("CCD") of the U.S. Department of State, Bureau of Consular Affairs,

5

which contains data recording visa applications issued and refused at U.S. diplomatic and consular posts, including the U.S. Consulate General in Montreal, Canada, where Uddin's interview took place. (*Id.* ¶¶ 1-2.)

According to McDonald, the CCD confirms that Plaintiff filed a Form I-130 on Uddin's behalf, the petition was approved on June 16, 2021, and it was received by the State Department on or around June 21, 2021, when a case file was created. (*Id.* ¶¶ 3-5.) Uddin's case became documentarily qualified on November 22, 2022, and he was scheduled for an interview with a consular officer at the U.S. Consulate General in Montreal, Canada, to take place on February 14, 2023. (*Id.* ¶¶ 6-7.) He did appear at the interview, and on the same date, the consular officer refused the visa application under INA ¶ 221(g), 8 U.S.C. § 1201(g). The consular officer determined that additional security screening was required, and consulate staff emailed Uddin a request for information found on Form DS-5535. Uddin submitted those answers, and they were received by the consulate. (*Id.* ¶¶ 9-10.) To date, the additional security screening is ongoing, and the visa application remains refused. (*Id.* ¶ 11.)

Plaintiff does not rebut the competent proof offered by Defendants that the visa application was refused after the consular interview, thus divesting her of standing to seek the visa adjudication. Instead, she simply asserts that the application remains in limbo, neither granted nor refused. (*See* Pl.'s Resp. at 7-8) ("A 'refusal' is not a final decision as the consular officer requested additional information for further review following the applicant's interview."). Plaintiff's

6

unsupported argument is not only contrary to the McDonald declaration but is also inconsistent with the statutory and regulatory requirements that the consular officer is limited to the binary choice to either issue or refuse the visa application after it has been completed and executed. There is no mechanism for the consular officer to put the application on hold following an interview, pending some other "final decision" not described in the regulations. *See Alharbi v. Miller*, 368 F. Supp. 3d 527, 557 (E.D.N.Y. 2019) ("[T]here is no third option. The visa must be issued or refused."). Uddin's visa was not issued, thus it was refused. The fact that the visa application was not permanently rejected, and Uddin was given an opportunity to submit additional information, does not negate the fact that it has been adjudicated.

      Plaintiff's other arguments are also unpersuasive. First, she asserts that she still has a live claim for damages in the form of attorneys' fees under EAJA. But the case she cites in support is unhelpful, holding only that "a live claim for nominal damages will prevent dismissal for mootness." *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002). Plaintiff seeks only injunctive relief, not nominal damages, for Defendants' alleged inaction. Attorneys' fees and costs under EAJA are not elements of her damages claim; rather, those are costs and fees that "may be awarded to the prevailing party in any civil action brought by or against the United States." *See* 28 U.S.C. § 2412(a)(1). Unsurprisingly, Plaintiff offers no authority for the notion that a prayer for EAJA fees, by itself, confers subject matter jurisdiction, as such a rule would lead to absurd results. Second, Plaintiff's conclusory arguments that her claims are not moot because the events in the

7

complaint are egregious and capable of repetition, are undeveloped and unsupported with case law, and therefore need not be addressed. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.")

The Court therefore holds that Plaintiff's complaint is dismissed for lack of standing to the extent that it seeks an order compelling Defendants to complete administrative processing of Uddin's visa, to adjudicate the visa, and to explain the delay.

## II. Motion to Dismiss for Failure to State a Claim

Plaintiff's complaint also asks the Court to issue a writ of mandamus compelling Defendants to issue an immigrant visa to Uddin.[3] Unlike the forms of relief dismissed for lack of standing, *supra,* this alleged injury could be redressed by a favorable decision, and thus it survives the Rule 12(b)(1) analysis. Plaintiff also has standing to bring her Count II claim for a due process violation. Defendants move to dismiss the remaining claims pursuant to the doctrine of consular nonreviewability and because Plaintiff has no due process interest in her father's visa application.

Rule 12(b)(6) requires a court to accept all of a plaintiff's well-pleaded facts as true as well as reasonable inferences drawn therefrom. *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). A plaintiff must provide a "short and plain statement of the

---

[3] Plaintiff's brief states that she "hopes to protect her interest in having her father's visa application adjudicated in a reasonable time, not necessarily granted in a reasonable time," which seems to conflict with her prayer for a writ compelling Defendants to issue the visa. (Pl.'s Resp. at 7.) The Court assumes Plaintiff did not intend to waive the relief.

claim showing that the pleader is entitled to relief" in order to defeat a motion to dismiss. Fed. R. Civ. P. 8(a)(2); *see Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007). The complaint need not plead all specifics, but it must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"); *Smith v. Garland,* 103 F.4th 1244, 1251-52 (7th Cir. 2024) ("While all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)).

The doctrine of consular nonreviewability is based on the general principle "that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Dep't of State v. Muñoz*, -- U.S. --, 144 S. Ct. 1812, 1820 (2024) (citation omitted); *see Pak v. Biden*, 91 F.4th 896, 900 (7th Cir. 2024). When Congress delegates that authority, "the action of an executive officer to admit or to exclude an alien is final and conclusive" and "[t]he Judicial Branch has no role to play unless expressly authorized by law." *Muñoz*, 144 S. Ct. at 1820; *see also Pak*, 91 F.4th at 900 ("[O]rdinarily, visa decisions made by consular officers abroad are not subject to judicial review.").

9

Plaintiff acknowledges that the doctrine of consular nonreviewability is triggered when "'a consular officer has made a *decision* with respect to a particular visa application,'" but contends the doctrine does not apply because no decision has been made on Uddin's application. (*See* Pl.'s Resp. at 7) (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)) (emphasis in original). As previously discussed, however, a decision has been made on the application – it was refused.

Plaintiff cites the APA and the Foreign Affairs Manual for the proposition that courts have the authority to review consular decisions for compliance with laws and regulations in certain circumstances. However, "[p]laintiffs cannot shield their claims from the doctrine of consular nonreviewability by 'repackaging [their] substantive complaints as procedural objections.'" *Pak*, 91 F.4th at 900-01 (citation omitted) (explaining that the doctrine also applies "where a plaintiff challenges some other, related aspect of a consular officer's decision to deny a visa"). Plaintiff's effort to force the State Department to approve the visa with the new information Uddin submitted is essentially "a substantive challenge to the Executive's discretionary decisions," and thus the claim is unreviewable. *See Pak*, 91 F.4th at 901. Furthermore, Plaintiff's due process claim must fail, as she has no due process right to the prompt adjudication of her father's visa. *See Muñoz*, 144 S. Ct. 1812, 1821 (2024) ("Today, we resolve the open question. . . . [W]e hold that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country.").

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 11] is granted.

**SO ORDERED.**                              **ENTERED:**

**DATE:** **September 17, 2024**

                                                     **HON. MARIA VALDEZ**
                                                     **United States Magistrate Judge**